# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MAXIMILIANO L.,[1]**

        **Plaintiff,**

                                    **Case No. 3:21-cv-0083**

    **v.**                                  **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Maximiliano L. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.      PROCEDURAL HISTORY

On August 11, 2017, Plaintiff filed his application for benefits,[3] alleging that he has been disabled since January 31, 2017.[4] R. 93, 107. The application was denied initially and upon reconsideration. R. 108−15. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 116−18. Administrative Law Judge ("ALJ") Dina Loewy held a hearing on July 18, 2019, at which Plaintiff, who was represented by counsel, testified. R. 45−79. The ALJ held a second hearing on November 21, 2019, which Plaintiff, who was again represented by counsel, appeared, and a vocational expert testified. R. 31−44. In a decision dated March 2, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 11, 2017, the date on which the application was filed, through the date of that decision. R. 15−25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 5, 2020. R. 1−6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 4, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[5] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 10. The matter is ripe for disposition.

---

[3] The copy of the application for benefits is one for disability insurance benefits, R. 294−95, but the ALJ and the parties agree—and the order from the Appeals Council reflects—that Plaintiff sought supplemental security income. *See* R. 5, 15, 25; *Plaintiff's Brief*, ECF No. 17, p. 1; *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 5.

[4] Plaintiff later amended his alleged onset date to August 11, 2017, the date on which he filed his application. R. 78.

[5] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

4

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully

developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.**     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for

determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d

632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial

gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not

disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe

impairment or combination of impairments, then the inquiry ends because the plaintiff is not

disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of

impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 36 years old on the date on which the application for benefits was filed. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff's asthma, bronchiectasis, major depressive disorder and generalized anxiety disorder were severe impairments. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18−20.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 20−23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a mail carrier. R. 23−24.

At step five, the ALJ found that a significant number of jobs−*e.g.*, approximately 82,000 jobs as a packer produce; approximately 35,000 jobs as a rag sorter; approximately 22,000 jobs as a store laborer−existed in the national economy and could be performed by Plaintiff. R. 24−25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 11, 2017, the application date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

## IV.     RELEVANT MEDICAL EVIDENCE

On June 28, 2018, Mercedes Rudelli, M.D., Plaintiff's treating psychiatrist, completed a five-page, check-the-box, fill-in-the-blank form entitled, "Psychiatric/Psychological Impairment Questionnaire." R. 488−92. Dr. Rudelli indicated that she had treated Plaintiff twice a month since August 10, 2017, and had most recently treated him on June 28, 2018. R. 488. She diagnosed major depression, panic attacks, and anxiety. *Id.* She identified social settings as a psychosocial factor. *Id.* Dr. Rudelli denied that Plaintiff required hospitalization or inpatient treatment for his symptoms and denied that he was a malingerer. *Id*. According to Dr. Rudelli, Plaintiff's diagnoses and limitations were expected to last at least twelve months. *Id*. Dr. Rudelli identified the following signs and symptoms that supported her diagnoses and assessments: depressed mood; constricted affect; difficulty thinking or concentrating; easy distractibility;

recurrent panic attacks; decreased energy; psychomotor abnormality (retardation); social withdrawal and isolation; and insomnia. R. 489. Of these signs and symptoms, Dr. Rudelli identified Plaintiff's isolation, depression, anxiety, panic attacks, and decreased concentration to be the most frequent and/or severe. R. 490. When asked to list and discuss other clinical findings that support the diagnoses and assessment, including, *e.g.*, results of mental status examinations, psychological testing, etc., Dr. Rudelli responded as follows: "Alert oriented x3 Fatigue Anxious. [Illegible] Concentration. Indecisive." *Id*. Dr. Rudelli denied that Plaintiff had a low IQ or reduced intellectual functioning or that Plaintiff's psychiatric conditions exacerbate pain or any other physical symptoms. *Id*. Dr. Rudelli answered in the affirmative that Plaintiff experienced episodes of decompensation or deterioration in a work or work-like setting that cause him to withdraw from the situation and/or experience an exacerbation of symptoms. *Id*. (reflecting additional illegible explanation).

According to Dr. Rudelli, Plaintiff had moderate-to-marked[6] limitations in his ability to perform all mental activities: understanding and memory; concentration and persistence; social interactions; and adaptation. R. 491. Specifically, Plaintiff had moderate-to-marked limitations in his ability to remember locations and work-like procedures; understand and remember one-to-two-step instructions; understand and remember detailed instructions; carry out simple, one-to-two-step instructions as well as detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without

---

[6] The form explains that "moderate-to-marked" limitations refer to "[s]ymptoms [that] frequently interfere with ability," with "frequent" defined as one-third to two-thirds of an eight-hour workday. R. 491.

interruptions from psychological symptoms; perform at a consistent pace without rest periods of

unreasonable length or frequency; interact appropriately with the public; ask simple questions or

request assistance; accept instructions and respond appropriately to criticism from supervisors;

get along without coworkers or peers without distracting them; maintain socially appropriate

behavior; adhere to basic standards of neatness; respond appropriately to workplace changes; be

aware of hazards and take appropriate precautions; travel to unfamiliar places or use public

transportation; set realistic goals; and make plans independently. *Id.* Dr. Rudelli noted that

Plaintiff experienced no other work-related limitations beyond those noted above. R. 492. She

opined that Plaintiff was likely to be absent from work more than three times per month as a

result of his impairments or treatment. *Id.* She further opined that Plaintiff's symptoms and

related limitations existed as far back as July 1, 2012. *Id.* When asked whether the available

clinical and objective findings detailed in the questionnaire were reasonably consistent with

Plaintiff's symptoms and functional limitations, Dr. Rudelli checked the box marked, "Yes" and

wrote, "Pt. is reliable." *Id.*

  On June 13, 2019, Dr. Rudelli completed the same form‒"Psychiatric/Psychological

Impairment Questionnaire"‒again. R. 494‒98. In this form, Dr. Rudelli indicated that she

continued to see Plaintiff every two weeks and she diagnosed depression and panic attacks.[7] R.

494. She again noted that Plaintiff's course of treatment was consistent with the symptoms and

limitations described in the questionnaire and that Plaintiff's diagnoses and limitations were

expected to last at least twelve months, and she denied that Plaintiff was a malingerer. R. 494‒

95. Dr. Rudelli identified the following signs and symptoms that supported her diagnoses and

assessments: depressed mood; persistent or generalized anxiety; labile affect; obsessions or

---

[7] The additional diagnosis and notes are illegible. *Id.*

compulsions; difficulty thinking or concentrating; easy distractibility; poor memory, including immediate and recent memory; and decreased need for sleep. R. 495. Of these signs and symptoms, Dr. Rudelli identified Plaintiff's anxiety and depression as the most frequent and/or severe. R. 496. When asked to list and discuss other clinical findings that support the diagnoses and assessment, including, *e.g.*, results of mental status examinations, psychological testing, etc., Dr. Rudelli's response was not fully legible, but included "Anxiety[,]" "Depressed[,]" and "Decreased Recent Memory/attention[.]" R. 496. Dr. Rudelli denied that Plaintiff had a low IQ or reduced intellectual functioning or that Plaintiff's psychiatric conditions exacerbate pain or any other physical symptoms. *Id*. Dr. Rudelli answered in the affirmative that Plaintiff had experienced episodes of decompensation or deterioration in a work or work-like setting that caused him to withdraw from the situation and/or experience an exacerbation of symptoms, and that Plaintiff has good days and bad days. *Id*.

According to Dr. Rudelli, Plaintiff had a moderate[8] limitation in his ability to carry out simple, one-to-two step instructions. R. 497. Plaintiff had a moderate-to-marked limitation in his ability to interact with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; adhere to basic standards of neatness; and set realistic goals. *Id*. Plaintiff had marked[9] limitations in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without

---

[8] The questionnaire explains that a "moderate" limitation means that "[s]ymptoms occasionally interfere with ability" with "occasional" defined as up to one-third of an eight-hour workday. *Id*.
[9] The questionnaire explains that a "marked" limitation means that "[s]ymptoms constantly interfere with ability," and that "constant" was defined as more than two-thirds of an eight-hour workday. *Id*.

supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; respond appropriately to workplace changes; be aware of hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; and make plans independently. *Id.*[10]

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Rudelli's opinions. *Plaintiff's Brief*, ECF No. 17, pp. 12−17;  *Plaintiff's Reply Brief*, ECF No. 19, pp. 1−4. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination, *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704, and the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review," *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case

---

[10] Dr. Rudelli left blank the boxes next to the abilities of remembering locations and work-like procedures and understanding and remembering one-to-two step instructions. *Id*. She also checked two boxes next to the ability to understand and remember detailed instructions, indicating that Plaintiff had both a moderate and marked limitation in that area. *Id*.

law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[11] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 416.927 *with* 20 C.F.R. § 416.920c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at § 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

---

[11] As previously noted, Plaintiff's claim was filed on August 11, 2017.

or prior administrative medical finding(s) will be." *Id*. § 416.920c(c)(1).  As to the consistency

factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." *Id*. § 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate her "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [she] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id*. at § 416.920c(b).

"Specifically, the ALJ must explain how [she] considered the 'supportability' and 'consistency'

factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how

he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-

01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, at step four of the sequential evaluation process,

the ALJ found that Plaintiff had the RFC to perform medium work subject to certain additional

limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform medium work as defined
> in 20 CFR 416.967(c), except: the claimant must avoid concentrated exposure to
> extreme temperatures, wetness and humidity. The claimant must avoid even
> moderate exposure to pulmonary irritants such as fumes, odors, gases, and poor
> ventilation. The claimant is limited to simple, routine and repetitive work. The
> claimant is limited to no interaction with the public and occasional interaction with
> coworkers or supervisors.

R. 20. In reaching this determination the ALJ found, *inter alia*, that Dr. Rudelli's opinions were

not persuasive, reasoning as follows:

14

The undersigned also considered Mercedes Rudelli, M.D.'s opinions from June 2018 and June 2019 that the claimant had moderate to marked limitations in the "paragraph B" criteria, discussed above. (Ex. 7F, pgs. 3-7; 8F, pgs. 2-6; 12F, pg. 34). The undersigned finds these opinions non-persuasive because they are too-restrictive and are inconsistent and unsupported by *treatment records* and consultative examination findings, *discussed below as well as above under Finding 3.* The claimant has no history of psychiatric hospitalization. He reported that he stopped working as a mail carrier due to physical problems (Ex. 4F, pg. 2. He reported that he occasionally drives (Ex. 5F, pg.2.) His eye contact was noted to be good (Ex. 4F, pg. 3, 10F, pg. 2). He scored 30/30 on a mini mental status examination (Ex. 4F, pg.3). Finally, Dr. Rudelli opines that these limitations go back as far as July 2012, even though she has only been treating him since August 2017. The claimant reported that he had a history of abusing opoids [sic], alcohol and Ecstasy but had not used such substances since late 2015 (Ex. 10F, pg.4). Despite that, the claimant earned a Masters degree in 2012 and was employed as a mail carrier from 2016 to 2017 (Ex. 4E, pg. 3, 12D). In June 2018, Dr. Rudelli opined that the claimant had all moderate to marked limitations, and in June 2019, she opined that he had mostly marked limitations (Ex. 7F, 8F.) except she only examined him several times that one year period *during which time she did not perform any mental status examinations which would support the change in her opinion* (Ex. 12F.). *Treatment notes during that one-year period of time indicate the claimant was taking care of finances, had some friction with relatives and was alert and oriented* (Ex. 12F, pgs. 4, 9, 17)[.]

R. 22 (emphasis added).

Plaintiff challenges the ALJ's consideration of Dr. Rudelli's opinions, arguing that that physician's handwritten notes were illegible and that the ALJ simply assumed that the indecipherable findings contradicted her own and other physicians' findings. *Plaintiff's Brief*, ECF No. 17, pp. 13–14. Plaintiff also contends that Dr. Rudelli based her opinions on appropriate medical findings, including evidence of depressed mood, constricted affect, anxiety, difficulty thinking or concentrating, easy distractibility, recurrent panic attacks, decreased energy, psychomotor retardation, slowed speech, social withdrawal or isolation, and insomnia. *Id*. at 14 (citing R. 489, 495). Plaintiff goes on to argue that the ALJ failed to explain how the longitudinal psychiatric treatment notes are inconsistent with reports from other physicians and, without a legible treatment record, that the ALJ failed to develop this record and the ALJ did not

articulate how she considered this relevant evidence when assessing the supportability and consistency of Dr. Rudelli's opinions. *Id*. at 16−19. Plaintiff therefore contends that the ALJ improperly played doctor and cherry picked normal mental examination findings when discounting Dr. Rudelli's opinions. *Plaintiff's Reply Brief*, ECF No. 19, pp. 1−4.

The Acting Commissioner disagrees, insisting that the ALJ "did as she was required under the regulations[.]" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 13. The Acting Commissioner specifically contends that the ALJ evaluated Dr. Rudelli's "opinions as a whole[,]" repeating the ALJ's findings that this physician's opinions were "inconsistent" with and "unsupported by" the "treatment records and consultative examination findings[.]" *Id*. at 13−14 (citing R. 22−23). The Acting Commissioner does not address Plaintiff's argument that Dr. Rudelli's notes were illegible and therefore prevented the ALJ from properly assessing her opinions.

The Court agrees with Plaintiff that the ALJ erred in her consideration of Dr. Rudelli's opinions. The ALJ found these opinions to be not persuasive "because they are too-restrictive and are inconsistent and unsupported by treatment records and consultative examination findings, discussed below as well as above under Finding 3." R. 22. As a preliminary matter, despite her reference to treatment notes, the ALJ did not in fact discuss any treatment notes at step three related to Plaintiff's mental impairments. *See* R. 19 (referring to "treatment notes" but citing to records reflecting a consultative examination performed by Paulette Sabol, Ph.D., Exhibit 4F, R. 465−68, and a one-time evaluation performed by clinical psychologist, James Ellis, Ph.D., Exhibit 10F, R. 502−06). While the ALJ goes on to cite to three pages of progress notes from Dr. Rudelli, the ALJ credited some information contained in those notes but ignored other information without explanation. R. 22 (citing Exhibit 12F, pgs. 4, 9, 17 [582, 587, 595]).

Specifically, the ALJ stated that Dr. Rudelli's treatment notes from the period June 2018 to June 2019 reflect that Plaintiff was "taking care of finances, had some friction with relatives and was alert and oriented (Exhibit 12F, pgs. 4, 9, 17)[.]" *Id.* However, those notes also reflect that Plaintiff was fatigued, had decreased concentration, R. 587, and was depressed, R. 595. The Court cannot conclude that substantial evidence supports the ALJ's consideration of Dr. Rudelli's opinions where the ALJ selectively cited treatment notes that supported her opinion but ignored contrary portions without explanation. *See Flattery v. Comm'r of Soc. Sec. Admin.*, No. 920CV02600RBHMHC, 2021 WL 5181567, at *8–9 (D.S.C. Oct. 21, 2021), *report and recommendation adopted sub nom. Flattery v. Kijakazi*, No. 9:20-CV-02600-RBH, 2021 WL 5180236 (D.S.C. Nov. 8, 2021) ("While it is the ALJ's job to weigh the medical evidence, the ALJ should not cherry-pick certain findings in a Doctor's notes and use those as a basis to discount the Doctor's opinion while ignoring other notes that tend to support the Doctor's opinion. . . . Here, the ALJ did not explain why she chose to accept the findings that undercut Dr. Wildstein's opinion and to reject the findings that supported it."); *Segal v. Comm'r of Soc. Sec.*, No. CV 19-8839, 2020 WL 2111229, at *6–7 (D.N.J. May 4, 2020) (remanding where "the Court finds that the ALJ nonetheless erred in his treatment of medical evidence in the record: although the ALJ did not entirely ignore treatment notes from Plaintiff's providers, he selectively cited portions of these notes, rather than addressing the conflicting evidence within these records"); *Pastuch v. Comm'r of Soc. Sec.*, No. CV 17-989, 2018 WL 2018063, at *9 (D.N.J. May 1, 2018) ("The ALJ must not ignore the opinions of treating professionals or cherry pick evaluations, diagnostics, or opinions that support a particular conclusion."); *DeJesus v. Colvin*, No. CIV. 14-4798, 2015 WL 4902159, at *8 (D.N.J. Aug. 17, 2015) ("Adopting only portions of

an opinion that support the ALJ's RFC findings while failing to address those portions that contradict them . . . will not suffice as an adequate explanation.").

The ALJ also explained that she discounted Dr. Rudelli's opinions because the doctor "did not perform any mental examinations [between June 2018 and June 2019] which would support the change in her opinion [when she later found mostly marked limitations.]" R. 22. However, the Court cannot conclude with certainty that the ALJ accurately represented that Dr. Rudelli did not perform any mental status examinations between June 2018 and June 2019, particularly where the ALJ specifically relied upon Dr. Rudelli's finding that Plaintiff was alert and oriented. R. 22; *see also Tumlin v. Comm'r of Soc. Sec.*, No. 219CV00457JLBNPM, 2021 WL 1214880, at *11 n.16 (M.D. Fla. Mar. 31, 2021) ("The Merck Manual defines a mental status examination as 'an assessment of current mental capacity through evaluation of general appearance, behavior, any unusual or bizarre beliefs and perceptions (*e.g.* delusions, hallucinations), mood, and all aspects of cognition (e.g. attention, *orientation*, memory)[.]'") (citations omitted) (emphasis added); § 11:7. Physical examination of the neurologic system, Med. Proof of Soc. Sec. Disab. 2d § 11:7 (2022 ed.) ("The mental status exam is designed to roughly test higher functions. The first note is usually that the patient is (or is not) oriented to time, place, and person. The note will be 'oriented × 3' for normal folks.").

In any event, Dr. Rudelli's notes are mostly illegible, a fact that the ALJ does not acknowledge. R. 22, 579−615. The Court is at a loss to understand how the ALJ could assess the persuasiveness of Dr. Rudelli's opinion, which are material to Plaintiff's claims, and ultimately determine that the opinions were not persuasive when the ALJ could not decipher most of that physician's treatment notes. *Cf. Kenneth M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01090 EAW, 2022 WL 1637885, at *5 (W.D.N.Y. May 23, 2022) ("[T]he ALJ characterized the opinion from

Dr. Kim, the only treating source in the record, as 'largely illegible,' essentially conceding that by and large, the majority of the opinion was not considered at all. (Dkt 12 at 98). Even under the current regulations, the opinion of a treating source continues to have importance to the ALJ's analysis."); *Jesse R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1220 (CFH), 2022 WL 813918, at *7 (N.D.N.Y. Mar. 17, 2022) ("The ALJ did not explain whether the substance of Dr. Dempsey's opinion was supported by his treatment notes or psychiatric evaluations. . . . This omission amounts to legal error where the ALJ did not sufficiently 'explain how [h]e considered the supportability' of Dr. Dempsey's opinion with his objective medical evidence and the Court cannot otherwise glean the ALJ's rationale in finding the opinion unsupported.") (citations omitted); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19CV4630LJLBCM, 2020 WL 8167136, at *15–16 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted sub nom. Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) ("'[S]upportability,' under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion.") (quoting 20 C.F.R. § 416.920c(c)(1)); *Guarneri v. Berryhill*, No. 16-CV-5868 (KAM), 2019 WL 1865195, at *17 (E.D.N.Y. Apr. 24, 2019) (remanding where, *inter alia*, "[d]espite the inability to read these [mental health] records, the ALJ concluded that Dr. Filimonov's finding of 'extreme limitations by the plaintiff were 'inconsistent with the largely normal mental status findings documented by Dr. Filimonov himself'") (citations omitted). Notably, by implying that she could and did review and understand all of Dr. Rudelli's illegible treatment notes, the ALJ improperly cherry-picked from a small selection of legible notes, which, as previously discussed, is forbidden.

19

The Court cannot conclude that the ALJ's error in this regard is harmless. As set forth above, even though treating opinions are no longer entitled to special consideration under the regulations, Dr. Rudelli's opinions were critical to Plaintiff's claims, particularly where Dr. Rudelli found greater limitations than those contained in the RFC. R. 20, 491−92, 497−98; *see also Kenneth M.*, 2022 WL 1637885, at *5–6 ("Because Dr. Kim was the only treating source opinion of record and his opinions on Plaintiff's limitations were more restrictive than the RFC determined by the ALJ, the ALJ's failure to attempt to obtain a clearer copy of his opinions was error that cannot be considered harmless."). For example, in her June 2019 opinion, Dr. Rudelli found that Plaintiff had marked limitations in Plaintiff's ability to, *inter alia*, maintain attention and concentration for extended periods; perform activities within a schedule and be consistently punctual; sustain ordinary routine without supervision; work in coordination without or near others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length and frequency, and that Plaintiff would be absent from work as a result of his impairments or treatment more than three times per month. R. 491−92.

These opined limitations take on greater significance when one considers that the vocational expert testified, *inter alia*, that a hypothetical individual could not perform Plaintiff's past relevant work (mail carrier) or the jobs that the ALJ ultimately relied upon at step five (packer producer, rag sorter, and laborer store) if that individual had the same physical limitations in Plaintiff's RFC but could not sustain an ordinary mental routine without supervision for 20% of the workday; could not make simple work-related decisions; and could not work in coordination with or near others without being distracted by them. R. 40−41. The

20

vocational expert further testified that if such an individual were absent more than three times per month, either due to health-related symptomatology or treatment, that individual could not perform Plaintiff's past relevant work or the three jobs ultimately referred to by the ALJ. R. 41.

This Court concludes that remand of the matter for further consideration is appropriate even if, upon further clarification and supplementation of Dr. Rudelli's treatment notes and consideration of Dr. Rudelli's opinions from June 2018 and June 2019, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues. In reaching this decision, nothing in this opinion should be construed to suggest that remand is required every time a provider's notes are illegible. As explained above, remand is required on this record because the ALJ purported to understand all of the mostly illegible

treatment notes—and cherry-picked from those notes—from Dr. Rudelli, a treating physician whose material opinion the ALJ discounted for reasons not supported in the record.[12]

VI.    **CONCLUSION**

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  September 29, 2022                          *s/Norah McCann King*
                                                    NORAH McCANN KING
                                                    UNITED STATES MAGISTRATE JUDGE

---

[12] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further development and clarification of Dr. Rudelli's treatment notes and consideration of her opinions, the Court does not consider those claims.

22